```
                   UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF MISSISSIPPI
                         NORTHERN DIVISION


LATASHA SMITH                                           PLAINTIFF


VS.                              CIVIL ACTION NO.: 3:23-CV-276-TSL-RPM


SEAN TINDELL, IN HIS INDIVIDUAL
CAPACITY AND IN HIS OFFICIAL CAPACITY
AS COMMISSIONER OF THE MISSISSIPPI
DEPARTMENT OF PUBLIC SAFETY;
BO LUCKEY, IN HIS INDIVIDUAL CAPACITY
AND IN HIS OFFICIAL CAPACITY AS
CHIEF OF THE MISSISSIPPI CAPITOL
POLICE; AND JOHN DOES 1-15                             DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Sean Tindell, in his individual capacity and his official capacity as Commissioner of the Mississippi Department of Public Safety, and defendant Bo Luckey, in his individual capacity and his official capacity as Chief of the Mississippi Capitol Police, to dismiss pursuant to Rules 12(b)(1) and (12)(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff Latasha Smith has responded to the motion, and the court, having considered the memoranda of authorities submitted by the parties, concludes that the motion is well taken and should be granted.

1

The Complaint

Plaintiff alleges in her complaint that on December 11, 2022, law enforcement officers with the Mississippi Capitol Police (MCP), a division of the Department of Public Safety (DPS), "intentionally discharged their firearms into the apartment complex in which Plaintiff resided," resulting in "several bullets [striking] and enter[ing] the apartment home" occupied by plaintiff. One of those bullets struck plaintiff in the arm as she was lying in bed. Based on these facts, plaintiff has brought the present action against Commissioner Tindell and Chief Luckey, in their individual and official capacities, asserting claims under 42 U.S.C. § 1983 for alleged violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution,[1] and advancing a plethora of state law claims, including claims for negligence (Count V), gross negligence (Count VI), negligent hiring, retention, supervision and control (Count VII), res ipsa loquitur (Count VIII), reckless disregard (Count IX), vicarious liability-respondeat superior (Count X), agency

---

[1] Plaintiff's complaint includes four counts under § 1983, ostensibly based on defendants' alleged customs, policies and practices of violating citizens' constitutional rights to be free from excessive force (Count I); failure to implement appropriate customs, policies and practices to prevent violations of citizens' constitutional rights (Count II); failure to properly supervise MCP officers (Count III); and failure to intervene (Count IV).

(Count XI), civil assault and battery (Count XII), and outrage (Count XIII).  Defendants seek dismissal of each of these claims on one or more bases.

Section 1983 - Official Capacity Claims

Defendants are entitled to dismissal of plaintiff's § 1983 claims against them in their official capacities based both on their Eleventh Amendment immunity from suit and on the rule that states are not "persons" under § 1983.  DPS and MCP, a unit of DPS, are state agencies.  See Corn v. Miss. Dept. of Public Safety, 954 F.3d 268, 274 (5th Cir. 2020) (recognizing DPS as a state agency); Allemang v. Louisiana Through Dep't of Public Safety (Louisiana Office of State Police, Troop D), No. 21-30360, 2022 WL 3226620, at *4 (5th Cir. Aug. 10, 2022) (recognizing Louisiana State Police Department, sub-unit of the Louisiana Department of Public Safety, as state agency).  "The Eleventh Amendment bars federal 'suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.'"  Corn, 954 F.3d at 274 (quoting Bryant v. Tex. Dep't of Aging & Disability Servs., 781 F.3d 764, 769 (5th Cir. 2015)).  "Congress has not waived sovereign immunity for § 1983 suits."  Id. (quoting Richardson v. S. Univ., 118 F.3d 450, 453 (5th Cir.

3

1997)). And Mississippi has not waived its immunity. See Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). There is an exception to Eleventh Amendment immunity, the Ex Parte Young exception, which applies when a suit is brought against individual persons in their official capacities as agents of the state, alleges an ongoing violation of federal law and seeks prospective declaratory or injunctive relief. Id. Plaintiff references this exception in her response to defendants' motion. However, the Ex Parte Young exception is clearly inapplicable as plaintiff, in her complaint, seeks only monetary damages for an alleged past violation – not an ongoing violation – of her constitutional rights.

Furthermore, "§ 1983—as interpreted by the Supreme Court—does not allow for suits against state entities or against state officials in their official capacities." Allemang, 2022 WL 3226620, at *4 (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)); John G. and Marie Stella Kenedy Mem''l Found. v. Mauro, 21 F.3d 667, 671 (5th Cir. 1994) ("[A] state official . . . acting in his official capacity, is not a 'person' under § 1983 unless the relief

4

requested in a suit against him in this capacity is prospective relief.") (citing Will, 491 U.S. at 71 & n.10, 109 S. Ct. 2304)).

### Section 1983 – Individual Capacity Claims

Defendants seek dismissal of plaintiff's § 1983 claims against them in their individual capacities based on qualified immunity.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  "When a government official asserts a qualified immunity defense, the burden is on the plaintiff to 'show that he pleaded facts showing ... that the official violated a statutory or constitutional right.  If the plaintiff makes this ... showing, then [the court must] determine whether the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.'"  Alexander v. City of Round Rock, 854 F.3d 298, 303 (5th Cir. 2017) (quoting United States ex rel. Parikh v. Brown, 587 Fed. Appx. 123, 127-28 (5th Cir. 2014)).  Thus, to overcome defendants' qualified immunity defense, plaintiff must show that "(1) the defendant violated the plaintiff's constitutional rights and (2) the

defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." Porter v. Epps, 659 F.3d 440, 445 (5th Cir. 2011). See also Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012) (quoting Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the [qualified immunity] defense once properly raised.")). "[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Melton v. Phillips, 875 F.3d 256, 261 (5th Cir. 2017) (quoting Mullenix v. Luna, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)). A case directly on point is not required, but "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." Id. at 265 (quoting Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015)). See also Plumhoff v. Rickard, 572 U.S. 765, 778-79, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) (stating that a "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."). The court is permitted to

6

use its discretion, considering the circumstances of the case, in deciding which of these two prongs of the qualified immunity analysis to address first.  Plumhoff, 572 U.S. at 774, 134 S. Ct. at 2012.

In her complaint, plaintiff alleges that defendants "violat[ed] her Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure and harm of or to her person and home"; that defendants "violated her rights … under the Fourth and Fourteenth Amendments…, including the right to be free from the use of excessive, unreasonable and unjustified force"; and that she has suffered "physical injury and damage in connection with the deprivation of her Constitutional and statutory rights guaranteed by the Fourth and Fourteenth Amendments."  Although she asserts various theories of liability against defendants, such as failure to train, supervise and/or intervene, the basic factual premise of her claims in this lawsuit is that she was accidentally struck in the arm by a stray bullet not intended for her. Defendants maintain that plaintiff cannot overcome their qualified immunity on this factual premise because there is no Fourth or

7

Fourteenth Amendment violation in the absence of intentional conduct.2

"A bystander's right to be free from a law enforcement officer's use of excessive force springs from the unreasonable seizure clause of the Fourth Amendment or from the due process clause of the Fourteenth Amendment." Teames v. Henry, No. 3:03-cv-1236, 2004 WL 2186549, at *6 (N.D. Tex. Sep. 29, 2004) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), and Petta v. Rivera, 143 F.3d 895, 911 n.25 (5th Cir. 1998)); Campbell v. City of Indianola, 117 F. Supp. 3d 854, 867 (N.D. Miss. 2015) (same)). "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its

---

2   The court will address the substance of defendants' positions, notwithstanding that plaintiff could be deemed to have conceded their merit by her failure in her response to even acknowledge, much less address defendants' arguments as to the shortcomings of her putative Fourth and Fourteenth Amendment claims for excessive force and violation of her due process rights. In fact, her response is largely devoted to describing a claim she has not even pled, namely, violation of her "right to privacy [under] the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments," and her attendant "fundamental right to bodily integrity to be free from harm." The court does not consider plaintiff's arguments in support of claims that have not been pled in her complaint.

'reasonableness' standard' rather than under a 'substantive due process approach.'" Graham, 490 U.S. at 395, 109 S. Ct. 1865 (emphasis in original). See Plumhoff, 572 U.S. at 774, 134 S. Ct. at 2020) ("A claim that law enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard."). But "where a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment." Petta, 143 F.3d at 911 n.25 (citing Graham, 490 U.S. at 395 n.10, 109 S. Ct. 1865).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, *through means intentionally applied*". Brendlin v. California, 551 U.S. 249, 254 (2007) (quotations omitted) (emphasis in original). See Gorman v. Sharp, 892 F.3d 172, 173 (5th Cir. 2018) (citing Brower v. County of Inyo, 489 U.S. 593, 596–97, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989) ("Under established Supreme Court precedent, the Fourth Amendment concerns only intentional, not accidental, searches and

9

seizures.")).  "'A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful' and not merely the consequence of 'an unknowing act.'" Blair v. City of Dallas, 666 Fed. Appx. 337, 341 (5th Cir, 2016) (quoting Brower v. Cty. of Inyo, 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989)).

Plaintiff herein alleges only that officers fired shots into the apartment complex and that she was struck in the arm while lying in bed in her apartment.[3] She does not allege that the officers fired shots at her. She does not even allege that they were aware of her presence. The facts alleged do not amount to an intentional seizure of plaintiff and thus do not state a claim for violation of the Fourth Amendment. Even assuming solely for the sake of argument that plaintiff has alleged a Fourth Amendment violation, it is manifest she has not alleged the violation of a *clearly established right* under the Fourth Amendment. Indeed,

---

3   There is no allegation in the complaint as to the circumstances that led to this incident. In her response brief, plaintiff states that MCP officers were pursuing a stolen vehicle when the occupants, upon approaching the apartment complex, stopped, abandoned the vehicle and fled on foot. The officers discharged their weapons into the complex while firing at one or more of the fleeing suspects.

10

plaintiff has not identified a single case in which any court has found that a Fourth Amendment violation occurs when an innocent bystander is accidentally struck by an officer's stray bullet not intended for her.  The authority that does exist in this circuit is consistently to the contrary.

In Blair v. City of Dallas, officers fired shots at a suspect as he was exiting an apartment.  Id. at 339.  The suspect's girlfriend and three-year-old son, who were in the apartment at the time, although not physically harmed, sued the officers, alleging their freedom of movement was restrained and they were thus seized in violation of the Fourth Amendment.  Id.  There was no evidence that the officers were aware that the girlfriend and her son were in the apartment at the time of the shooting.  The Fifth Circuit acknowledged that "other circuits have typically concluded that 'where the seizure is directed appropriately at the suspect but inadvertently injures an innocent person, the innocent victim's injury or death is not a seizure that implicates the Fourth Amendment because the means of the seizure were not deliberately applied to the victim.'"  Id. at 341 (quoting Milstead v. Kibler, 243 F.3d 157, 163-64 (4th Cir. 2001), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223,

11

235, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).[4] The court observed that it "ha[d] not yet weighed in on whether an officer's use of force in such a circumstance constitutes a seizure within the meaning of the Fourth Amendment," id.; instead of deciding that issue, the court, under the second prong of the qualified immunity analysis, found the officers had qualified immunity because it was "apparent that any right that may have been violated was not clearly established at the time of the officers' alleged misconduct." Id. at 342.

In two more recent cases, the Fifth Circuit found no Fourth Amendment violation for officers' unintentional shooting of innocent persons. In Pearce v. Doe, Fed. Appx. 472 (5th Cir. 2021), the court found that no Fourth Amendment violation was alleged where an officer who discharged his weapon through a window accidentally shot and killed a hostage while trying to end

---

4 The court cited the following additional cases: Childress v. City of Arapaho, 210 F.3d 1154, 1157 (10th Cir. 2000) (holding that no seizure occurred when police officers shot at suspects and hit hostages); Claybrook v. Birchwell, 199 F.3d 350, 354, 359 (6th Cir. 2000) (holding that no seizure occurred when a stray bullet hit a bystander during a police gunfight); Schaefer v. Goch, 153 F.3d 793, 796–97 (7th Cir. 1998) (holding that no seizure occurred when a police officer shot at a suspect and hit a hostage); Medeiros v. O'Connell, 150 F.3d 164, 169 (2nd Cir. 1998) (same); Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 795 (1st Cir. 1990) (same).

12

a hostage situation; "[s]uch accidental conduct," the court wrote, "does not result in a Fourth Amendment seizure." Id. at 475. And in Gorman v. Sharp, 892 F.3d 172 (5th Cir. 2018), the court found that the defendant officer's fatal shooting of a fellow officer during a training session was not an intentional "seizure" under the Fourth Amendment where the defendant had inadvertently failed to replace his real firearm with a dummy firearm and "genuinely believed he was using a dummy firearm." Id. at 175.

Moreover, district courts in this circuit have found no seizure in this and analogous circumstances. See, e.g., Garcia v. City of Mcallen, Texas, Civil Action No. 7:19-cv-00068, 2020 WL 1660095, at *4 (S.D. Tex. Apr. 4, 2020) (under Gorman, defendant officer's accidental fatal shooting of minor occupant of home during shootout did not violate Fourth Amendment as the officer did not intend to shoot the minor, who was accidentally struck while the officer shot at his intended target); Estate of Macias v. Texas Dept.of Public Safety, SA-20-CV-00460-FB, 2021 WL 495877, at *11 (W.D. Tex. Feb. 9, 2021) (recognizing that there is no Fourth Amendment violation where the victim is "an unseen bystander merely caught in crossfire or killed accidentally during a high-speed chase"); Campbell, 117 F. Supp. 3d at 872 (granting summary judgment on Fourth Amendment claim based on plaintiff's

13

allegation that in process of officer's choking another, she was knocked to the ground); Martin ex rel. Martin v. Chandler, Cause Nos. 1:10CV203-SA-DAS, 1:10CV204-SA-DAS, 2012 WL 329155 (N.D. Miss. Feb. 1, 2012) (dismissing Fourth Amendment claim brought on behalf of toddler who fell and hit his head during officer's efforts to effect an arrest as there was no evidence that the child's fall was attributable to intentional actions by the officer). From the foregoing, it is clear beyond debate that defendants have qualified immunity as to plaintiff's Fourth Amendment claim.

That is true, as well, for plaintiff's putative Fourteenth Amendment due process claim. "Innocent bystander claims are frequently analyzed under the rubric of substantive due process, when a seizure of the victim did not occur, and therefore cannot be the basis of a Fourth Amendment violation." Estate of Macias, 2021 WL 495877, at *15 (citing Petta, 143 F.3d 895, 911 n.25). "Under the Fourteenth Amendment standard, the court must consider whether the defendants' 'actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power that shocks the conscience.'" Hayes v.

14

Woods, No. 1:12-cv-215, 2013 WL 5936384, at *5 (S.D. Miss. Nov. 1, 2013) (quoting Petta, 143 F.3d at 902). See Campbell, 117 F. Supp. 3d at 872 (same). "Due to the malice requirement, Fourth Amendment claims failing for lack of intent will also fail as Fourteenth Amendment due process claims." Campbell, 117 F. Supp. 3d at 872. Thus, just as plaintiff's Fourth Amendment claim fails for lack of intent, so, too, does her Fourteenth Amendment claim. Therefore, defendants are entitled to qualified immunity and plaintiff's federal claims will be dismissed.

State Law Claims

Defendants have moved for dismissal of all plaintiff's state law claims. They note, correctly, that several counts of her complaint – namely Counts VIII, IX, X and XI, for "res ipsa loquitur," "reckless disregard," "respondeat superior," and "agency" – do not allege causes of action at all and should be dismissed. See Franklin v. North Central Narcotics Task Force, 5:15-cv-120(DCB)(MTP), 2016 WL 3676666, at *6 (S.D. Miss. July 7, 2016) (dismissing counts alleging res ipsa loquitur, reckless disregard and respondeat superior because these "purported causes of action do not exist under Mississippi law, but are instead theories or elements potentially related to other counts in the Complaint.").

15

Defendants further point out that because plaintiff has not named DPS or MCP as a defendant, her claims against them for negligence, gross negligence and for negligent hiring, retention, supervision and control – Counts V, VI and VII, respectively – must be dismissed. Again, defendants are correct.[5]

The Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-1 *et seq.*, represents a limited waiver of sovereign immunity and provides the exclusive means of recovery for personal injuries caused by the negligence of a governmental entity or its employees acting within the scope of their employment. See Miss. Code Ann. § 11-46-7(1). The MTCA states in relevant part that "[a]n employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."

---

5    Notably, while defendants have offered specific legal bases for dismissal of each of plaintiff's state law claims, her response does not address any of their arguments. Rather, she has asserted only a wholly unresponsive argument that the police protection exception to the MTCA's waiver of sovereign immunity does not apply because the actions of the MCP officers in discharging their firearms into the apartment complex amounted to reckless disregard for the safety of apartment residents, including plaintiff.

16

Id. at § 11-46-7(2). The Mississippi Supreme Court has interpreted this provision to "'require[] that a governmental entity against which a money judgment is sought must be named as a defendant.'" Conrod v. Holder, 825 So. 2d 16, 19 (Miss. 2002) (quoting Mallery v. Taylor, 805 So. 2d 613, 622 (Miss. Ct. App. 2002)). "'[U]nless the action is brought solely against an employee acting outside of the scope of his employment, the government entity must be named and sued as the party in interest under the Tort Claims Act,'" failing which any claim against the employee must be dismissed. Id. (quoting Mallery, 805 So. 2d at 622) (affirming dismissal of claims against sheriff and deputy for alleged negligent failure to train where county employer was not named as a defendant); Cotton v. Paschall, 782 So. 2d 1215, 1218 (Miss. 2001) (observing that "this Court has been consistent in rejecting the viability of claims against public employees where their political subdivision employer has been eliminated as a defendant" and thus affirming dismissal of school bus driver where his employer school district was dismissed because it was never served with process).

In Count XII of her complaint, under the heading, "Assault and Battery," plaintiff alleges that "[t]he MCP officers [involved in the shooting incident] committed a civil battery upon the

17

Plaintiff by shooting her." And in Count XIII, for the "Tort of Outrage,"[6] she alleges that "[t]he MCP officers' overall conduct on the date in question was so outrageous that it shocked the moral and legal conscience of the community" and caused her injury and damage.[7] As to these causes of action, defendants Tindell and Luckey cannot be liable in their individual capacities because they are not alleged to have participated in the shooting incident on the date in question, and they cannot be liable in their official capacities because "state officials cannot be sued for violations of state law in federal court." Corn, 954 F.3d at 275 (citing Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)).

Conclusion

Based on the foregoing, it is ordered that defendants' motion to dismiss is granted.

---

[6] A claim for "outrageous conduct" in Mississippi is "the same tort" as intentional infliction of emotional distress. Speed v. Scott, 787 So. 2d 626, 629 & n.1 (Miss. 2001) (citing Restatement of Torts (Second) § 46).

[7] These claims do not fall under the MTCA. See Renfroe v. Parker, No. 2021-CA-01048-COA, 2023 WL 2579629, at *6 (Miss. Ct. App. Mar. 21, 2023) ("Actions against governmental employees for intentional infliction of emotional distress, assault, and battery do not fall under the MTCA.").

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 12th day of July, 2023.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE